## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

GERALDINE TYLER, on behalf of herself and all others similarly situated,

Plaintiff,

v.

HENNEPIN COUNTY, and MARK V. CHAPIN, Auditor-Treasurer, in his official capacity,

Defendants.

Court File No. 0:20-cv-00889-PJS-BRT
Judge Patrick J. Schiltz

**MEMORANDUM OF DEFENDANTS HENNEPIN COUNTY AND MARK V. CHAPIN IN SUPPORT OF MOTION TO DISMISS**

In this case, Plaintiff brings various challenges to Minnesota's carefully-crafted statutes relating to the collection of taxes assessed to real property. The gist of her complaint is that, after she failed to pay her property taxes and eventually forfeited her property to the state (who then had "absolute title" to the property), the County sold the property and did not disburse any of the proceeds to her. The County did so only after years of notices to Plaintiff and many opportunities to avoid the forfeiture.

In challenging the statutes, Plaintiff proposes to break this thoughtfully-ordered system to allow an individual to demand payment for a property interest that has been completely extinguished. Despite Plaintiff's contention, Minnesota's laws provide a reasonable mechanism to enforce the payment of real property taxes that balances a myriad of equities and interests—including both private rights and the public interest. To the extent policy considerations support a change to Minnesota's property tax laws, the Minnesota Legislature must make those changes.

1

Plaintiff's claims against Hennepin County and Mark V. Chapin should be dismissed.

## FACTUAL BACKGROUND

Plaintiff Geraldine Tyler resided at 3600 Penn Avenue North, Apartment 105 (the "Property") until sometime in 2010. (Amended Class Action Complaint and Petition for Writ of Mandamus ("Compl.") at ¶ 5 [ECF No. 1-2 at 37-64 (Ex. G)].) Although she still owned the Property, Plaintiff did not pay the taxes she owed beginning in 2011 and the tax collection process began, culminating when the State of Minnesota took absolute title to the Property in July 2015. *Id.* At that time, all outstanding taxes owing on the Property were canceled by law. Minn. Stat. § 282.07.

A year after the state took absolute title, Hennepin County—tasked with managing the tax-forfeited properties within its borders on behalf of the state—sold the Property. The property sold for $40,000, a sum in excess of the approximately $15,000 in tax, penalty, interest and fees owing at the time of forfeiture. (Compl. at ¶ 5.) Pursuant to Minnesota law, the net proceeds of the sale were placed into the "tax forfeited sale fund." Minn. Stat. § 282.09. After the County's expenses were deducted, proceeds from the sale of the Property were disbursed to the County, the City of Minneapolis, and the Minneapolis Public Schools. Minn. Stat. § 282.08(4)(iii).

## PROPERTY TAX FORFEITURE UNDER MINNESOTA LAW

Property taxes have been assessed on real property in Minnesota—and enforced through the sale of that real property—since at least 1851. Chapter 12, The Revised Statutes of the Territory of Minnesota 1851. The statutory regime for property taxes is complex and

balances the competing interests of property owners and lienholders with that of the state and units of local government that rely upon property taxes to fund government services. Because taxes are collected at the county level, county auditors are tasked with enforcing Minnesota's property tax laws.[1]

### A.    Minnesota property taxes are a perpetual lien against the property.

Taxes are assessed against real property on the second day of January each year (the "Assessment Year") and paid the following year (the "Payable Year"). Minn. Stat. §§ 273.01, 275.28 subd. 3. These taxes are a "perpetual" lien as of the assessment date. Minn. Stat. § 272.31. The property tax obligation includes all taxes levied by the taxing districts in which a property is located, including the state, county, city, school district, watershed district, and sanitary district. Minn. Stat. §§ 275.065, 275.066, 275.07. The county auditor must collect property taxes on behalf of all these taxing authorities.

A property's tax bill may also include "special assessments," which are property-specific obligations for special improvements (like a new sewer line) or municipal services (a water bill), which, if not paid directly to the city, are certified to the county for collection as part of the property tax. Minn. Stat. §§ 429.021, 429.101, 429.061. Once certified, "[a]ll assessments and interest thereon shall be collected and paid over in the same manner as other county taxes." Minn. Stat. § 429.061 subd. 3.

---

[1]    The Minnesota Department of Revenue helps counties administer the state's property tax laws by publishing online and updating annually its 242-page Delinquent Tax and Tax Forfeiture Manual ("Red Book").

**B.    Property taxes not paid in a Payable Year become delinquent the following January and a Tax Judgment is obtained.**

To avoid penalty, property taxes must be paid in two equal installments by May 15 and October 15 of a Payable Year. Minn. Stat. § 279.01. On January 1 of the following year, any unpaid taxes become delinquent and interest begins to accrue. Minn. Stat. § 279.03 subd. 1. By February 15 of that same year, the county auditor must file a "Delinquent Tax List" with the district court administrator. Minn. Stat. § 279.05. The Delinquent Tax List identifies the parcels owing delinquent taxes, the taxpayers, and the amount of taxes and penalties owing by year. *Id.* By statute, the filing of the Delinquent Tax List constitutes the commencement of a lawsuit for judgment against each property named on the List. *Id.*

After the Delinquent Tax List is filed, the district court administrator generates a notice describing the action, Minn. Stat. § 279.06, which is published twice along with the Delinquent Tax List, Minn. Stat. § 279.09. The notice, along with the relevant portion of the Delinquent Tax List, is additionally mailed to taxpayers and persons who have requested notice. Minn. Stat. § 279.091. Any interested person may file an answer in response to the county's judgment action. If no answer is filed, the district court administrator "shall enter judgment." Minn. Stat. § 279.16.

**C.    If the judgment is not satisfied, the parcel is sold to the state by operation of law and a redemption period begins.**

On the second Monday in May, each parcel with an unsatisfied judgment is sold to the state by operation of law. Minn. Stat. §§ 280.001–280.01. Before 1974, properties with tax judgments were sold at public auction on the second Monday in May, subject to the

owner's right of redemption. *See, e.g.*, 1969 Minn. Stat. §§ 280.01–280.03. Now, properties are deemed to have been "bid in" to the state by operation of law.

"Title to all parcels of land bid in for the state shall vest in the state subject only to the rights of redemption set forth in chapter 281." Minn. Stat. § 280.41. "Any person claiming an interest in any parcel of land bid in by the state" may redeem it for the amount of delinquent tax, along with any applicable penalty, interest and costs. Minn. Stat. §§ 281.01–281.02. The length of the redemption period is dependent upon the property's location and homestead classification but is three years for most properties. Minn. Stat. § 281.17.

The county must notice interested parties before the expiration of the redemption period in four different ways. Minn. Stat. § 281.23. The county prepares a "Notice of Expiration of Redemption," which names any owners of record, taxpayers of record, and parties who have requested notice pursuant to Minn. Stat. § 276.041. *Id.* subd. 2. This Notice is (1) posted in the auditor's office, (2) published, (3) mailed by certified mail to all known interested parties, and (4) personally served upon any occupant of the property. *Id.* subds. 2, 3, 5, 6. Final forfeiture occurs the later of the second Monday in May or 60 days after service of the notice of expiration of redemption is completed. *Id.* subds. 2, 7. At that time, the county auditor records a "Certificate of Expiration of Redemption" with the county recorder/registrar of titles, which certificate is "prima facie evidence of the facts therein stated." *Id.* subd. 9.

Minnesota counties actively work to help owners prevent forfeiture. A county's chief statutory tool to prevent forfeiture is the confession of judgment created by Minn.

5

Stat. § 279.37. Under that statute, taxpayers can agree to the entry of judgment for all delinquent taxes, costs, penalty, and interest owing by the property. *Id.* subds. 1-2. By doing so, the owner can consolidate multiple years of delinquency into a single obligation, to be paid in installments over five to ten years. *Id.* A confession of judgment does not transform the debt into a personal liability. *Id.* subd. 4. If a confession of judgment is canceled because the owner cannot make payment on the installment or taxes in the current Payable Year, that owner may make a second confession of judgment on the same delinquent taxes. *See id.* subd. 10. Finally, counties may offer financial counseling at no additional cost to owners and taxpayers as part of the confession of judgment process. *Id.* subd. 1b.

### D.    The State of Minnesota holds title in trust for the taxing districts.

When a property owner or other interested party fails to redeem by the end of the redemption period, "absolute title . . . shall vest in the state." Minn. Stat. § 281.18. This is the final step in the collection process. Title to a forfeited property is held "in trust" by the state for the taxing districts to whom taxes are owed at the time of final forfeiture. Minn. Stat. § 281.25. Upon final forfeiture, all tax, penalty, interest, costs, and special assessments are canceled by the county auditor. Minn. Stat. § 282.07. Unlike other secured debts, Minnesota law provides no personal liability for real property taxes. Thus, the owner of a property has no liability to the taxing districts for any deficiency if the value of the property is less than the tax owing.

Minnesota law also gives the owner and certain interested parties the opportunity to repurchase a forfeited property from the state. Minn. Stat. § 282.241 subd. 1. A non-homestead property may be repurchased in the six months following final forfeiture, while

a property classified as homestead at the time of final forfeiture may be repurchased at any time until the state sells the property.[2] *Id.* The county even has discretion to allow the repurchaser to make installment payments, consistent with the remedial purpose of the repurchase statute. *Id.* (repurchase must remedy "undue hardship or injustice" or "promote the use of the lands that will best serve the public interest"); *Radke v. St. Louis Cty. Bd.*, 558 N.W.2d 282, 284-85 (Minn. Ct. App. 1997) ("If any reasonable means can be devised whereby ownership may be protected against tax forfeitures, without injury to others, clearly it should be the purpose of the state to lend a helping hand.") (quoting *State ex rel. Equity Farms v. Hubbard*, 280 N.W. 9, 13 (Minn. 1938)). Unlike a sale to any third party, the repurchaser need only pay the tax, penalty, interest, costs, and special assessments owing at the time of forfeiture, along with any taxes that would have been collected had the property not forfeited. Minn. Stat. §§ 282.241, 282.251. The canceled taxes are reinstated upon repurchase, and the cost of repurchase thus makes the taxing districts whole as though the parcel had never forfeited. *Id.*

A challenge to the state's title must be brought within one year. Minn. Stat. § 284.28 subd. 2. A claimant who does not do so is "conclusively presumed to have abandoned all right, title, and interest" in the property. *Id.* subd. 6. There is a longer time period—ten years—to seek compensation for unjust deprivation as a result of a material error in the forfeiture; such a claim must name the state commissioner of management and budget and be paid out of the state general fund. *Id.* subds. 7-10.

---

[2]     Before January 1, 2018, a non-homestead property could be repurchased for one year following final forfeiture. 2017 Minn. Laws Ch. 1, Art. 2, Sec. 36.

**E.**     **Counties manage tax-forfeited properties within their boundaries until they are returned to productive use.**

Following a property's final forfeiture, the county—responsible for managing all forfeited properties within its boundaries[3]—works to maintain properties and ultimately return them to productive use. First, the county must hold a public classification meeting upon 60 days' notice, to classify every forfeited parcel as conservation or non-conservation. Minn. Stat. § 282.01 subd. 1. The meeting's purpose is to determine which parcels should be retained for the benefit of the public, and which should be returned to private use. *Id.* (requiring consideration of public comments and potential government uses of the property). Counties can opt not to hold a public meeting but instead to seek approval from the city or town for each classification and sale. *Id.* subd. 1(f)–(h).

Next, the county may receive requests from other governmental entities to place a "six-month hold" on the sale of a forfeited property so that the entity has time to consider acquiring it. Minn. Stat. § 282.01 subd. 1a. Both conservation and non-conservation properties may be sold to governmental entities in certain situations for less than market value or even no cost if in furtherance of specific public purposes. *Id.* subds. 1a, 2(b).

If no governmental entity wants a non-conservation property, a county may sell it to a private buyer for its appraised value. Minn. Stat. § 282.01 subds. 3-4. The county may offer the property on a contract for deed for up to 10 years. *Id.* subd. 4(a). Procedures to sell non-conservation properties "shall be liberally construed to encourage the sale and

---

[3]     The participation of the state is necessary to effectuate any sale: in any conveyance, it is the commissioner of revenue who executes the deed.

utilization of tax-forfeited land in order to eliminate nuisances and dangerous conditions and to increase compliance with land use ordinances." *Id.* subd. 4(c). Properties may be sold at public auction (in person or online) or through a broker. *Id.* subds. 4(c), 7, 13. The county may impose conditions limiting the parcel's use or "limiting the public expenditures that shall be made for the benefit of the parcel or otherwise safeguarding against the sale and occupancy of these parcels unduly burdening the public treasury."[4] Minn. Stat. § 282.03. Often significant public investment is made in a property before sale. Sometimes dilapidated structures are demolished or rehabbed. Minn. Stat. § 282.04 subd. 2.

As this discussion makes clear, forfeited property is repurposed to both governmental entities and private buyers in a manner designed to further specific policy goals crafted by the legislature. Sometimes a forfeited property is sold for its market value, and sometimes not, consistent with these policy choices. Likewise, a county may invest significantly in property prior to sale, and impose conditions on such sale, in order to achieve its own policy objectives.

### F.    After deducting the county's expenses, the proceeds from the sale of forfeited property are distributed to the county, city and school district.

When a forfeited property is sold, the proceeds are not distributed proportionately to the taxing districts whose taxes went unpaid. Those taxes were canceled upon final forfeiture. Minn. Stat. § 282.07. Instead, the county is first reimbursed for its expenses. Minn. Stat. § 282.08. Any special assessments by cities are paid, along with expenses for

---

[4]    For example, Hennepin County has required that buyers of forfeited property agree to homestead the property and to bring it up to code.

any municipal improvements and environmental clean-up that increased the value of the property. *Id.* The county may then choose to devote funds to forest development and county parks and recreational areas. *Id.* Finally, any balance is to be distributed as follows: county—40 percent; town or city—20 percent; and school district—40 percent.[5] *Id.*

Applying this statutory regime to the facts pled in the Complaint, the forfeiture of Plaintiff's Property proceeded as follows:

| January 2, 2010 | Taxes payable in 2011 became a lien on the Property |
|---|---|
| May 15 and October 15, 2011 | Deadline to pay Payable 2011 taxes to avoid penalty |
| January 1, 2012 | Payable 2011 taxes became delinquent |
| May 14, 2012 | Property "bid in" and sold to state; Redemption period began |
| Winter/spring 2015 | County served Notice of Expiration of Redemption four different ways |
| July 2015 | Final forfeiture |
| July 2016 | Deadline to apply to repurchase if non-homestead[6] |
| November 2016 | Property sold |
| 2017 | Balance in Fund from 2016 sales disbursed to county, city, and school district |

## ARGUMENT

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[5]     For this reason, every county (there are 87), city and township (there are 2,747), and school district (there are at least 327) in the state of Minnesota in which a forfeited property was sold and to which the county disbursed funds pursuant to Section 282.08 is a necessary party to this action.

[6]     The Amended Complaint does not indicate the property's classification on the date of final forfeiture.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In reviewing Plaintiff's constitutional claims, the Court must begin by assuming the statutes in question are valid and constitutional. *E.g.*, *Fitz v. Dolyak*, 712 F.2d 330, 333 (8th Cir. 1983); *Minnesota Sands, LLC v. Cty. of Winona*, 940 N.W.2d 183, 191 (Minn. 2020) (noting that state statutes are presumed constitutional and that a court's power to declare a statute unconstitutional "is to be exercised only when absolutely necessary and with extreme caution"). Moreover, both Minnesota and federal courts hold that trial courts should be particularly careful when considering the constitutionality of a state statute involving taxation. *Walker v. Itasca Cty. Auditor*, 624 N.W.2d 599, 601 (Minn. Ct. App. 2001), *aff'd sub nom. Walker v. Zuehlke*, 642 N.W.2d 745 (Minn. 2002).

A.    **Defendants' sale of tax-forfeited property for a surplus is not a taking, so Counts I-IV should be dismissed.**

Plaintiff claims that Defendants' sale of her tax-forfeited property for more than the amount she owed in taxes, fees, and penalties violates the Takings Clauses of the Minnesota and U.S. Constitutions. (Compl. at ¶¶ 58-89.) The Fifth Amendment of the U.S. Constitution provides that "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. Similarly, the Minnesota Constitution provides that "[p]rivate property shall not be taken, destroyed or damaged for public use without just

11

compensation." Minn. Const. art. I, § 13. The language of the two Takings Clauses are similar, and so Minnesota courts rely on cases interpreting the U.S. Constitution's Clause in interpreting the analogous clause in the Minnesota Constitution. *E.g.*, *Wensmann Realty, Inc. v. City of Eagan*, 734 N.W.2d 623, 631–32 (Minn. 2007); *Zeman v. City of Minneapolis*, 552 N.W.2d 548, 551–52 (Minn. 1996).[7]

As the Supreme Court has explained, "[t]he Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). In this case, however, Plaintiff's property was "not taken for a public purpose; rather it was sold because of taxes that were not paid." *Speed v. Mills*, 919 F. Supp. 2d 122, 129 (D.D.C. 2013) (noting that although a tax sale deprived a party to a "portion of property that was lawfully his, it cannot be considered a 'taking' under the Fifth

---

[7]     Although the language of the Minnesota Constitution's Takings Clause is somewhat broader than that of the U.S. Constitution—prohibiting not only the "taking" of private property but also the "destruction" or "damage" of that property—that difference is of no moment here. Plaintiff claims a "taking" of her property, not that Defendants destroyed or damaged her property. Those Minnesota cases that find a difference between the two Takings Clauses arise in meaningfully distinct circumstances: namely, in eminent domain or regulatory takings cases. *E.g.*, *State by Humphrey v. Strom*, 493 N.W.2d 554 (Minn. 1992); *Interstate Cos., Inc. v. City of Bloomington*, 790 N.W.2d 409, 413 (Minn. Ct. App. 2010). In such cases the prohibitions in Minnesota's Taking Clause against "destruction" or "damage" to private property could offer greater protection than those in the U.S. Constitution. *See, e.g.*, *id.* at 414 (focusing, in regulatory takings case, on distinction that Minnesota's Takings Clause also prohibits private property from being "*damaged* for public use without just compensation" (emphasis in original)). Plaintiff has not identified anything special or unique about Minnesota property law that would give her rights above those afforded to her by the federal Constitution's Takings Clause in this unique situation.

Amendment" because the sale "took place pursuant to the District's taxing power, not its power of eminent domain, its regulatory power, or any other power enabling it to take or encumber private property for a public purpose").

     i.     <u>Since the State has "absolute" title to properties when they are sold, any sale is not a "taking" within the meaning of the Fifth Amendment.</u>

To maintain a Takings Clause claim, a plaintiff must have an interest in the property that the government has allegedly taken and must possess this interest at the time of the taking. *E.g.*, *United States v. Dow*, 357 U.S. 17, 20 (1958) (noting that a plaintiff could "prevail only if the 'taking' occurred while he was the owner"); *Ritter v. Ross*, 558 N.W.2d 909, 912 (Wis. Ct. App. 1996). A party without a cognizable interest in property cannot claim to have had that property "taken" from her.

Here, the only practice Plaintiff complains is unconstitutional is the government's sale of properties that the government unquestionably owns at the time they are sold. As described above, Minnesota's forfeiture process vests title to a tax-forfeited property in the state. Minn. Stat. § 281.18 (providing that if an owner fails to redeem by the end of the redemption period, "absolute title . . . shall vest in the state").[8] Once the state acquires title, only then does a county begin the long process of deciding what productive use a tax-

---

[8]     Of course, Plaintiff had many opportunities to redeem property. Minn. Stat. §§ 279.37, 281.23. Plaintiff chose not to do so, but instead to complain about her rights only when it became apparent that the county's sale of the property resulted in a surplus. Had Defendants sold the property for less than what Plaintiff owed, Plaintiff would not have been obligated to pay the difference. *Weberling v. Bursell*, 230 N.W. 654, 655 (Minn. 1930).

forfeited property should be put to, including deciding that the property should be sold. *E.g.*, Minn. Stat. § 282.01 subd. 1.

As a result, the government owns the property when it is sold and so there is nothing to "take" from taxpayers. *E.g.*, *Ritter*, 558 N.W.2d at 912-13; *Sheehan v. Cty. of Suffolk*, 67 N.Y.2d 52, 58-60 (N.Y. 1986). Put another way, since former owners have no property interest in a property once the state acquires title, they have no claim to any proceeds from a sale of the property.

Moreover, federal and Minnesota courts agree that a forfeiture is constitutional and not a taking. *E.g.*, *Bennis v. Michigan*, 516 U.S. 442, 452-53 (1996); *Lukkason v. 1993 Chevrolet Extended Cab Pickup*, 590 N.W.2d 803, 807 (Minn. Ct. App. 1999). So although the Takings Clauses do prohibit the taking of private property for public use without just compensation, courts distinguish between times when a government acquires property through eminent domain and when it does so using its other enforcement powers. As *Bennis* explains, government is not required to "compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." 516 U.S. at 452.

In *Bennis*, Bennis's husband was convicted of a crime he committed in the couple's jointly-owned car. *Id.* at 443. The local prosecutor sued both husband and wife, alleging that the car was a public nuisance subject to abatement and forfeiture. The Circuit Court entered an abatement order, but the Appeals Court reversed. The Supreme Court of Michigan reversed and re-entered the abatement order. The wife, innocent of any criminal activity, appealed to the U.S. Supreme Court. Tracing a "long and unbroken line of cases,"

14

the Supreme Court held that the car's forfeiture did not violate the federal Takings Clause. *Id.* at 452-53. Relying on *Bennis*, the Minnesota Court of Appeals has likewise concluded that vehicle forfeitures, as an exercise of the state's police power, are not an unconstitutional taking. *Lukkason*, 590 N.W.2d at 807.

Indeed, as this Court has itself previously held, where "a forfeiture is otherwise lawful, a state does not violate the Fifth Amendment's Takings Clause . . . by taking property through forfeiture proceedings." *Ashanti v. City of Golden Valley*, No. 10-CV-2121 PJS/JJG, 2011 WL 1114320, at *10 (D. Minn. Mar. 24, 2011), *aff'd*, 666 F.3d 1148 (8th Cir. 2012).

That is what the state did here: pursuant to Minnesota statute, it acquired title to Plaintiff's property by forfeiture when Plaintiff failed to pay her property taxes and to redeem the property before she forfeited it. Notably, Plaintiff does *not* claim that the state's practice of tax forfeiture is itself unconstitutional, or that Defendants did not faithfully follow state statute governing those forfeitures. Although the Amended Complaint references default principles of property law (Compl. ¶¶ 20-30), nowhere does Plaintiff point to a specific federal or Minnesota law that gives her any interest in a property she forfeited to the state. This is because there was no interest to take.

      ii.    <u>Courts consistently hold that a government's post-forfeiture sale of property and its retention of any surplus does not violate the Takings Clauses.</u>

Federal and state courts across the country have consistently rejected the claims Plaintiff makes here: that a government's sale of a tax-forfeited property for a surplus and its retention of the surplus violates the Fifth Amendment. *E.g.*, *Nelson v. City of New York*,

15

352 U.S. 103, 110 (1956) (holding that the U.S. Constitution does not prevent the government from keeping a foreclosure sale's surplus proceeds if "adequate steps" are taken to notify the owner of the delinquency and foreclosure proceedings); *Wayside Church v. Cty. of Van Buren*, No. 1:14-CV-1274, 2015 WL 13308900, at *8 (W.D. Mich. Nov. 9, 2015), *vacated on other grounds sub nom. Wayside Church v. Van Buren Cty.*, 847 F.3d 812 (6th Cir. 2017); *Automatic Art, L.L.C. v. Maricopa Cty.*, No. CV 08-1484-PHX-SRB, 2010 WL 11515708, at *6 (D. Ariz. Mar. 18, 2010); *Reinmiller v. Marion Cty., Or.*, No. 05-1926-PK, 2006 WL 2987707, at *3 (D. Or. Oct. 16, 2006); *Balthazar v. Mari Ltd.*, 301 F. Supp. 103, 104-06 (N.D. Ill. 1969); *City of Auburn v. Mandarelli*, 320 A.2d 22, 30-31 (Me. 1974); *Kelly v. City of Boston*, 204 N.E.2d 123 (Mass. 1965); *Sheehan*, 67 N.Y.2d at 59-60; *Ritter*, 558 N.W.2d at 912-13; *see also Oosterwyk v. Cty. of Milwaukee*, 143 N.W.2d 497, 499 (Wis. 1966) (rejecting quasicontractual claim over a government's sale of a tax-forfeited property because "the state simply sold its own land and was entitled to the entire proceeds of the sale").

A few examples are instructive.

In *Ritter v. Ross*, plaintiffs brought a taking claims against a government for its retention of the $17,345 received from the sale of a tax-foreclosed property to satisfy plaintiffs' tax arrearage of $84.43. 558 N.W.2d at 910. The court began by noting the many cases involving constitutional challenges to state tax foreclosure sales, which "generally conclude that a taxpayer has a recognizable interest in the excess proceeds from such a sale *only* if the state constitution or tax statutes create such an interest." *Id.* at 912 (emphasis added). But where a state's constitution and statutes are at least "silent as to the distribution

16

of excess proceeds received in a tax sale, the municipality may constitutionally retain them as long as notice of the action meets due process requirements." *Id.* Since Wisconsin's statutes did not articulate any express right for taxpayers to any surplus, and since the government's notices satisfied due process requirements, the Wisconsin Court of Appeals held that the county's retention was not an unconstitutional taking. *Id.* at 912-13.

The District of Oregon came to the same conclusion in *Reinmiller*. There, in dismissing plaintiff's takings claims, the court relied on (1) the "well-settled" principle that the "States have a very wide discretion in the laying of their taxes," (2) the reasoning articulated in *Ritter* and many other like cases that taxpayers have no right to any surplus from the sale of tax-forfeited property unless those rights are created under state law, and (3) the fact that Oregon's statutes did not expressly grant landowners rights to any surplus from a sale, but instead directed that surplus be distributed to the government. 2006 WL 2987707, at *3. The court recognized that a number of other states handle this distribution differently, but held that "the appropriate forum to raise these concerns is the state legislature." *Id.*

More recently still, the District of Arizona rejected a delinquent taxpayer's claims that the government violated the Takings Clause when it sold and retained the surplus proceeds of a tax foreclosure sale. *Automatic Art*, 2010 WL 11515708, at *5-6. Following *Nelson*, the court held that the plaintiff's "interest in the subject property terminated completely with the issuance of the treasurer's deed, and no deprivation of constitutional rights occurred." *Id.* at *6. That is because the plaintiff "had no continuing property interest in the subject property after the treasurer's deed issued." *Id.*

So too here. Once the state acquired title to Plaintiff's property through the forfeiture process she no longer possessed any interest in the property. Minn. Stat. § 281.18. There is no Minnesota constitutional provision, statute, or case that expressly holds that Plaintiff holds any property interest in the surplus after the expiration of the redemption period.[9] Accordingly, Defendants were free to sell Plaintiff's property, and to distribute any surplus as directed by statute.

Although Plaintiff references a few decisions going the other way (Compl. at ¶ 29), these are distinguishable. *Thomas Tool Servs., Inc. v. Town of Croydon*, 761 A.2d 439 (N.H. 2000), for example, did involve a government tax foreclosure. But there the court resolved the takings clause claim under the New Hampshire Constitution in a few sentences, concluding only that the foreclosure was an "unduly harsh penalty" because the government foreclosed on a property worth $65,000 for a $370.26 tax arrearage. *Id.* at 441. Whether the government's acquisition of property is "unduly harsh" is not the question under either federal or Minnesota law, however.

    iii.    <u>If it exists, any unfairness caused by Minnesota's tax collection and forfeiture statutes must be remedied by the legislature, and not this Court.</u>

It may seem unfair to allow the government to retain money beyond that owed by a taxpayer. But any perceived unfairness results from Plaintiff's years of inaction. Plaintiff

---

[9]    The sale of a tax-forfeited property should not be confused with the sale of a tax certificate, which was allowed in Minnesota until 1974. *See, e.g.*, *Farnham v. Jones,* 19 N.W. 83, 85 (Minn. 1884) (noting an owner's right to claim a surplus from the sale of a tax certificate after the state's lien is satisfied). At that point in the process, the owner still had an interest in the property—the right to redeem. Today, this "sale" happens by operation of law to the state and the redemption period begins. When the redemption period expires the owner no longer has any right in the property.

failed to fully pay her property tax obligations. Defendants provided ample notice of the

deficiency; by operation of statute, Defendants would have provided many property tax

notices over the course of 6 years. Minn. Stat. §§ 273.121, 275.065, 276.04, 279.091,

281.23. Despite those notices, Plaintiff did not act to pay her taxes or to redeem the

property. Nor did she avail herself of the chance to sell her property, pay the back taxes out

of the proceeds, and keep any surplus for herself. Because she failed to do any of these

things, losing that surplus in the property is the natural consequence of Plaintiff's own

actions.

> As recognized by New York's highest court in an analogous case:
>
> There is no unfairness . . . in the county's retention of any surplus. The taxpayers in each of the statutory schemes under review are given a three-year period of redemption. During this period, plaintiffs had the opportunity to either pay the taxes and penalties due or sell the property subject to the lien and retain the surplus. This redemption period affords the taxpayer an opportunity to avoid a full forfeiture. Statutes which allow a State to retain the excess collected upon the public sale of property have been sustained where they provide for a lengthy redemption period.
>
> A three-year redemption period, as set forth in the challenged statutes, gives sufficient opportunity for a taxpayer to reclaim the property. It is not unjust for a legislative body to declare that once a taxpayer has abandoned rights in property after such a period has expired, the taxing authority may take a deed in fee. At that point, the former owner can no longer claim any just compensation upon its resale. Full forfeiture has already occurred upon the taxpayer's failure to redeem the property before it has been resold.

*Sheehan*, 67 N.Y.2d at 59 (internal citations omitted). Here, Plaintiff had all the same

procedural safeguards and opportunities as the owners in *Sheehan* to take the full benefit

of the value of her property. Having failed to do so she cannot now claim any right to the

property.

In comparison, what Plaintiffs propose—that these statutes be found unconstitutional—is itself unfair and entirely impracticable. Under Plaintiff's view, a landowner has the right to any upside if a property sells for more than the tax owed (even though the owner failed to exercise existing state law remedies or to sell the property), but can walk away with nothing owed if the government sells the property for less than the outstanding tax bill. This unfairly shifts the risk of loss exclusively to the state (and its taxpayers) while granting the possibility of gain exclusively to landowners who have not paid their taxes.

As to impracticability, if the law were to be held unconstitutional, who among the possible lenders, construction lienholders, judgment creditor-lienholders, and former owners would be entitled to the proceeds of any sale, and in what order? Would the county be subject to suit by a disgruntled lienholder who claimed that the county sold a tax-forfeited property too cheaply? Who would administer and pay to resolve disputes between parties with various interests? And in the meantime, what would happen to the property?

These competing interests—the government's interest in being able to collect taxes as against individual property rights—present clear policy decisions that must be resolved, if at all, by the legislature. *Nelson v. Productive Alternatives, Inc.*, 715 N.W.2d 452, 457 n.5 (Minn. 2006) (noting that courts are "generally . . . reluctant to undertake the task of determining public policy since this role is usually better performed by the legislature"); *see also Mattson v. Flynn*, 13 N.W.2d 11, 16 (Minn. 1944) ("The public policy of a state is for the legislature to determine and not the courts."). This Court should decline Plaintiff's

invitation to make core policy decisions and should instead dismiss Plaintiff's Takings Clause claims.

### B.    Minnesota's post-forfeiture sale of real property is not an excessive fine, so Counts V-VI should be dismissed

Plaintiff also claims that the tax forfeiture of the Property is an excessive fine that violates her constitutional rights. The Excessive Fines Clause is identical in both the U.S. and Minnesota constitutions. *See Wilson v. Comm'r of Revenue*, 656 N.W.2d 547, 552 (Minn. 2003) (applying federal standards for excessive fines). Despite Plaintiff's claims, the facts alleged do not constitute a "fine" under the Excessive Fines Clause. In addition, even if Plaintiff had received a fine, her claim requires individualized factfinding that could not be accomplished in a class, as Plaintiff wants.

For Plaintiff's claims to proceed, this Court must determine whether the forfeiture constitutes a "fine" under Eighth Amendment jurisprudence. This turns on the question of whether the forfeiture was remedial or punitive. *Austin v. United States*, 509 U.S. 602, 609-10 (1993). Minnesota's tax forfeiture scheme is clearly remedial in nature.

### i.    The structure and purpose of Minnesota's tax forfeiture statutes are remedial, not punitive.

To date, the U.S. Supreme Court has applied the Excessive Fines Clause of the Eighth Amendment in a limited number of cases, which have generally involved forfeiture of property involved in the commission of a crime. *See Timbs v. Indiana*, 139 S. Ct. 682, 686 (2019) (involving forfeiture of a vehicle after its owner pleaded guilty to dealing in a controlled substance); *United States v. Bajakajian*, 524 U.S. 321, 324-25 (1998) (involving forfeiture of $357,144 after its carrier pleaded guilty to failing to report transporting more

than $10,000 out of the country); *Austin*, 509 U.S. at 604 (involving forfeiture of mobile home and auto body shop after their owner pleaded guilty to possessing cocaine with intent to distribute). The statutes at issue in those cases differ considerably from those here. However, the cases provide a broadly applicable standard for determining what constitutes a "fine" subject to the Excessive Fines Clause.

"The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as '*punishment* for some offense.'" *Id.* at 609-10 (quoting *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989) (emphasis in original)). Courts must therefore determine whether a penalty "can only be explained as serving in part to punish." *Id.* at 610. Punitive penalties are subject to the Excessive Fines Clause, remedial penalties are not. *Bajakajian*, 524 U.S. at 331-32 (distinguishing that case's crime-adjacent forfeiture from other remedial *in rem* forfeitures).

In interpreting the Excessive Fines Clause, the Court has clarified that remedial penalties serve the purpose of compensating the government for a loss. *See id.* at 329. They can also promote public safety. *Austin*, 509 U.S. at 621. By contrast, punitive penalties often feature statutory language directly tied to the commission of criminal offenses or a statutory defense prohibiting forfeiture of property where its owner is innocent of a crime. *Id.* at 619-20; *Bajakajian*, 524 U.S. at 328.

Deterrence is another statutory purpose that courts may consider, but the Supreme Court has noted that "all civil penalties have some deterrent effect." *Hudson v. United States*, 522 U.S. 93, 102 (1997) (considering whether a statute was remedial or punitive

under the Double Jeopardy Clause). The Court further observed that "[i]f a sanction must be 'solely' remedial (*i.e.*, entirely nondeterrent) to avoid implicating the Double Jeopardy Clause, then no civil penalties are beyond the scope of the Clause." *Id.* The same logic should reasonably apply in the context of the Excessive Fines Clause.

Minnesota's tax forfeiture statutes bear all the Supreme Court-sanctioned hallmarks of a remedial statute. The purpose of the tax forfeiture provision is to encourage the collection of taxes to ensure that government can fund public services. The statute also contains provisions intended to maintain public health and safety, allowing the government's administration of forfeited properties to consider "nuisances and dangerous conditions" that may exist on the property. Minn. Stat. § 282.01 subd. 4(c).  Forfeiture also deters non-payment of property taxes; this deterrence is not to prevent crime, but rather a civil deterrence that encourages the positive behavior of paying one's property taxes. *See Hudson*, 522 U.S. at 102.

In contrast, none of the features of a punishment are present here. The statutes do not tie the tax forfeiture process to any criminal proceeding whatsoever. They apply equally to all delinquent taxpayers. The statutory regime is also structured to provide many opportunities for taxpayers to avoid forfeiture or to repurchase a property. Minn. Stat. §§ 279.37, 281.17, 281.23, 282.241. Furthermore, the statutes demonstrate no intent to punish delinquent taxpayers because it contains no provision that ensures payment beyond the taxes owed. Indeed, delinquent taxpayers may have their tax debt extinguished by forfeiture of a property worth less than the debt itself.

This analysis alone should dispose of the key question: Minnesota's tax forfeiture statutes are remedial and therefore not a fine for purposes of the Excessive Fines Clause.

    ii.    <u>Statutes analogous to Minn. Stat. § 279-282 are remedial</u>.

The Court need not rely solely on Defendants' analysis to conclude that the challenged statutes are remedial. The Supreme Court and several lower courts have upheld analogous statutes.

For example, the Supreme Court has drawn a stark distinction between criminal *in personam* proceedings, like the one applied *Bajakajian*, and *in rem* proceedings, like the one presented here. *Bajakajian*, 524 U.S. at 321-22. Specifically, the Court cited a variety of early customs laws that "required the forfeiture of goods imported in violation of the customs laws, and, in some instances, the vessels carrying them as well." *Id.* at 340. The Court found that these laws, regardless of their proportionality, were outside the reach of the Excessive Fines Clause. *Id.* at 340-41. It reasoned:

> These forfeitures . . . were civil *in rem* forfeitures, in which the Government proceeded against the property itself on the theory that it was guilty, not against a criminal defendant. Such forfeitures sought to vindicate the Government's underlying property right in customs duties, and like other traditional *in rem* forfeitures, they were not considered at the founding to be punishment for an offense.

*Id.* at 340 (citations omitted).

The Court also has ruled that a penalty in excess of the amount due to the government is not punitive. In *Stockwell v. United States*, 80 U.S. 531 (1871), the Court considered a customs statute that required violators to forfeit and pay double the value of the item illegally imported. *Id.* In answering whether a violator's knowledge of the illegal

importation needed to be proven by a civil or criminal standard, the Court found that the statute was remedial in nature and applied the civil rule. *Id.* at 546-47. In answer to the claim that the government was extracting more than the value of the property from its holder, the Court stated:

> It is, then, hardly accurate to say that the only loss the government can sustain from concealing the goods liable to seizure is their single value, or to assert that the liability imposed by the statute of double the value is arbitrary and without reference to indemnification. Double the value may not be more than complete indemnity. There are many cases in which a party injured is allowed to recover in a civil action double or treble damages. Suits for infringement of patents are instances, and in some States a plaintiff recovers double damages for cutting timber upon his land. It will hardly be claimed that these are penal actions requiring the application of different rules of evidence from those that prevail in other actions for indemnity.

*Id.* at 547.

Critically, courts repeatedly find that tax penalties are remedial. In *Helvering v. Mitchell*, the Supreme Court found a civil tax fraud penalty to be remedial as part of a claim of double jeopardy. 303 U.S. at 402-04 (1938). There, a taxpayer made fraudulent claims resulting in a lower tax bill and the statute permitted criminal prosecution and a fine worth 50 percent of the fraudulently unpaid taxes, in addition to payment of those taxes. *Id.* at 392. The taxpayer in *Helvering* was acquitted in his criminal trial and challenged his 50 percent fine as a punitive, criminal penalty that violated the doctrine of double jeopardy. *Id.* at 396, 398-99. The Court disagreed. In upholding the statute, the Court observed that "[t]he remedial character of sanctions imposing additions to a tax has been made clear by this Court in passing upon similar legislation. They are provided primarily as a safeguard

for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Id.* at 401.

Lower courts have followed *Helvering*'s determination that tax penalties are remedial. *See, e.g.*, *Little v. Comm'r of Internal Revenue*, 106 F.3d 1445, 1448, 1454-55 (9th Cir. 1997) (upholding additions to tax when taxpayer negligently understated his tax liability); *McNichols v. Comm'r of Internal Revenue*, 13 F.3d 432, 434-35 (1st Cir. 1993) (upholding additions to tax owed on property that had also forfeited to the government); *Dewees v. United States*, 272 F. Supp. 3d 96, 98, 100-01 (D.D.C. 2017), *aff'd*, 767 F. App'x 4 (D.C. Cir. 2019) (upholding $120,000 penalty for 12 years of tax non-compliance). Indeed, courts have applied this understanding so consistently that the case law finding tax penalties to be remedial is referred to as "an insurmountable wall." *Dewees*, 272 F. Supp. 3d at 101.[10]

This insurmountable wall includes cases involving the penalty of tax forfeiture. *See Santoro v. Cty. of Collin, Tex.*, No. 4:18-CV-00660-ALM-CAN, 2019 WL 5692187, at *10 (E.D. Tex. Aug. 16, 2019), *report and recommendation adopted*, No. 4:18-CV-660, 2019 WL 4686361 (E.D. Tex. Sept. 26, 2019) ("The sale of Plaintiffs real property to satisfy delinquent ad valorem taxes is not a 'punishment' subject to the Eighth Amendment but, rather, is a remedial device related to the government's fundamental interest in raising and

---

[10]   An exception to this rule merits brief mention. In *Wilson v. Commissioner of Revenue*, 656 N.W.2d 547 (Minn. 2003), the corporate officer of an employer was made liable for the entire amount of an employee's unpaid taxes. *Id.* at 549. This was found to be punitive. *Id.* at 554. Because Plaintiff is not challenging a tax penalty charged to a third party, this exception does not apply here.

collecting revenue."); *see also Rose v. Oakland Cty. Treasurer*, No. 19-13066, 2020 WL 871304, at *6 (E.D. Mich. Feb. 21, 2020) ("[N]othing in *Timbs* suggests that it has any impact on the law applicable in this case, which relates to a tax foreclosure of real property, because, '[g]iven that the [Eighth] Amendment is addressed to bail, fines, and punishments, [the Supreme Court's] cases long have understood it to apply primarily, and perhaps exclusively, to criminal prosecutions and punishments.'") (quoting *Browning-Ferris Indus.*, 492 U.S. at 262).

Note also that, although the Supreme Court's Excessive Fines case law does not include a specific ruling on the constitutionality of tax forfeiture, tax forfeiture statutes have come before the Court on several different occasions and raised only objections as to the notice provided, not the penalty itself. *See Jones v. Flowers*, 547 U.S. 220, 234 (2006) ("People must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property."); *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

Minnesota's tax forfeiture statutes provide for an *in rem* proceeding against property itself, similar to the traditional *in rem* proceedings described as remedial by *Bajakajian*. Forfeiture itself can result in a penalty in excess of the tax debt owed, but the Supreme Court has similarly found that this does not constitute punishment. *Stockwell*, 80 U.S. at 547. And lastly, the challenged statutes are undeniably tax penalties, a type of penalty supported by an "insurmountable wall" of precedent ruling it remedial.

In sum, the purpose of Minnesota's tax forfeiture statute is remedial. Accordingly, the forfeiture does not constitute a fine under the Eighth Amendment. The Court should dismiss the excessive fines claims.[11]

### C.    Defendants' actions comport with substantive due process, so Counts IX-X should be dismissed.

Plaintiff also argues, wrongly, that Defendants' sale of tax-forfeited property for a surplus violates substantive due process protections in the U.S. and Minnesota Constitutions. (Compl. at ¶¶ 118-25.)

When legislation does not use suspect classifications or encroach on fundamental rights, it need only be rationally related to a legitimate governmental purpose in order to survive a substantive due process challenge. *Hodel v. Indiana*, 452 U.S. 314, 331 (1981). Moreover, "such legislation carries with it a presumption of rationality that can only be overcome by a *clear showing* of arbitrariness and irrationality." *Id.* at 331–32 (emphasis added). "Legislation will fail rational basis review only when it rests on grounds irrelevant to the achievement of a plausible governmental objective." *Lukkason*, 590 N.W.2d at 806.

---

[11]    Even if the Court were to find that forfeiture results in a fine, such a claim could not be adjudicated on a class basis. Plaintiff alleges that the County's "confiscating" of the surplus imposes an excessive fine on all putative class members. (Compl. at ¶¶ 92, 99.) In other words, in Plaintiff's view, any retention by government of the surplus from a forfeiture, be it $1 or $1 million, constitutes an excessive fine. When courts consider whether a punitive fine is excessive, they must engage in a fact-specific inquiry as to whether the fine was "grossly disproportional." *Bajakajian*, 524 U.S. at 334. In *Bajakajian*, the Court specified that strict proportionality was not required, meaning that a penalty need not be perfectly tailored to the offense. *Id.* at 336. The factfinding required to determine whether a penalty is grossly proportional is far too individualized to merit class treatment.

"Essentially the same analysis and standards apply" to Minnesota's substantive due process clause. *Id.* (citations omitted).

The Minnesota Court of Appeals applied these standards in a challenge to the state's motor vehicle forfeiture statute by a person convicted of three DWIs. *Id.* at 804. The drunk driver argued that the statute failed rational basis review because it allowed the state to "(1) keep the vehicle without compensating him for its lost value or (2) keep the sale proceeds of the vehicle rather than turning them over to him." *Id.* at 806. The court was not persuaded:

> The legislature chose forfeiture as the means to achieve its desired remedial objective. Civil forfeitures are designed to confiscate property used in violation of the law. By their very nature, forfeitures entail the loss of compensatory interests in forfeited property. In fact, under the statutory scheme, once the district court determined the car was subject to forfeiture, Lukkason had no further property interest except the right to appeal the forfeiture. See Minn. Stat. § 169.1217, subds. 3, 9 (once car judicially forfeited, all interests in vehicle vest in state agency, which is directed to sell car or use reasonable efforts to use vehicle in drug abuse resistance education). Moreover, the statute directs the agency to use the vehicle's sale proceeds to further its remedial DWI-related activities.

*Id.* at 806-07 (internal citations omitted). In addition, the statute only allowed a forfeiture where a driver had not "heeded the warnings of previous sentences and license revocations." *Id.* Taking these facts together, the court concluded that vehicle forfeiture was a reasonable means to a permissible goal, and thus, that the statute did not violate the driver's substantive due process rights. *Id.*

This case closely parallels *Lukkason*. Here, the purpose of Minnesota's tax collection and forfeiture statutes have the remedial purposes of promoting the state's ability to collect and enforce the collection of taxes and to encourage the speedy return to

productive use of property forfeited for delinquent taxes. *See State v. Scott*, 117 N.W. 417 (Minn. 1908) ("The purpose of these statutory provisions is to secure revenue from public lands as speedily and as inexpensively as may be."). The statute serves this purpose because the ultimate possibility of loss of property serves as a deterrent to those taxpayers considering tax delinquency. Like the motor vehicle statute, under § 282 property owners forfeit their properties and their right to any surplus only after ignoring dozens of notices, and failing to either pay their taxes, redeem the property, or repurchase the property. The legislature's decision at issue here—to allow the government to retain the surplus—is constitutional, just like the legislature's decision to let the government keep the proceeds from the sale of a forfeited motor vehicle was held constitutional in *Lukkason*. Plaintiff's substantive due process claims should be dismissed.

> **D.     Minnesota's post-forfeiture sale of real property is not an inverse condemnation and does not unjustly enrich Defendants, so Counts VII and VIII should be dismissed**

Plaintiff's remaining two claims should also be dismissed.

First, in Count VII Plaintiff seeks a writ of mandamus, pursuant to Minn. Stat. § 586, directing Defendants to commence condemnation proceedings and provide Plaintiff with just compensation for the forfeiture of her property. The question of granting that writ turns solely on whether a taking occurred under either the U.S. or Minnesota Constitution. *See Wensmann Realty*, 734 N.W.2d at 631-32. As discussed above, the forfeiture and sale of Plaintiff's property was not a taking. Count VII should thus be dismissed for the same reasons as the Takings Clause claims.

Second, Plaintiff's unjust enrichment claim also fails. "The elements of an unjust enrichment claim are: (1) a benefit conferred; (2) the defendant's appreciation and knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for him to retain it without paying for it." *Dahl v. R.J. Reynolds Tobacco Co.*, 742 N.W.2d 186, 195 (Minn. Ct. App. 2007). Unjust enrichment includes "situations where it would be morally wrong for one party to enrich himself at the expense of another." *Cady v. Bush*, 166 N.W.2d 358, 361–62 (Minn. 1969). Here, Defendants are unwilling recipients of forfeited property; indeed, Minnesota law provides many opportunities to avoid final forfeiture. The statutory collection process that culminates in forfeiture is a rational policy choice that balances many equities. Likewise, it is not "morally wrong" for Minnesota to sell property that was legally forfeited and to disburse the proceeds as it sees fit; rather, the failure to contribute to the public treasury is the wrong.

Finally, to the extent that Plaintiff is actually making any other claim that it has not expressly pled in the Amended Complaint—like its reference to an "in the alternative, if applicable" claim under 42 U.S.C. § 1983—Defendants respectfully request that the Court grant them leave to move to dismiss those claims once Plaintiff clarifies them.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court dismiss the claims in the Amended Complaint.

Respectfully submitted,

Dated:  April 24, 2020

MICHAEL O. FREEMAN
Hennepin County Attorney

*s/ Rebecca L.S. Holschuh*

Rebecca L.S. Holschuh (# 0392251)
Kelly K. Pierce (# 0340716)
Jeffrey Wojciechowski (# 0397748)
A-2000 Government Center
300 South 6th Street
Minneapolis, MN 55487
Telephone: (612) 348-4797
Email:  rebecca.holschuh@hennepin.us
            kelly.pierce@hennepin.us
            jeffrey.wojciechowski@hennepin.us

*Attorneys for Defendants Hennepin County and Mark V. Chapin*