# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-3730
_____

Geraldine Tyler, on behalf of herself and all others similarly situated,

*Plaintiff - Appellant*,

v.

Hennepin County; Mark Vincent Chapin, Auditor-Treasurer, in his official capacity,

*Defendants - Appellees*.

------------------------------

AARP; AARP Foundation,

*Amici on Behalf of Appellant(s)*,

International Municipal Lawyers Association; Association of Minnesota Counties,

*Amici on Behalf of Appellee(s)*.
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 21, 2021
Filed: February 16, 2022
_____

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Geraldine Tyler owned a condominium in Minneapolis. When she stopped paying her property taxes, Tyler accumulated a tax debt of $15,000. To satisfy the debt, Hennepin County foreclosed on Tyler's property and sold it for $40,000. The county retained the net proceeds from the sale. Tyler sued the county, alleging that its retention of the surplus equity—the value of the condominium in excess of her $15,000 tax debt—constituted an unconstitutional taking, an unconstitutional excessive fine, a violation of substantive due process, and unjust enrichment under state law. The district court[1] granted the county's motion to dismiss on all counts, and we affirm.

I.

Geraldine Tyler purchased a condominium in Minneapolis in 1999. In 2010, she moved into an apartment and stopped paying the property taxes that she owed on the condominium. The State of Minnesota then initiated a tax-collection process.

In Minnesota, property taxes are a perpetual lien against the property. Minn. Stat. § 272.31. Property taxes not paid during the year in which they are due become delinquent on January 1st of the following year. *See id.* § 279.03, subdiv. 1. Each year, the county must file a delinquent tax list; this filing commences a lawsuit against the properties on which delinquent taxes are owed. *Id.* § 279.05. Property owners who owe outstanding taxes receive multiple notices of both the delinquent tax

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

list and the action. *Id.* §§ 279.06, 279.09, 279.091. If no answer is filed, the district court administrator "shall enter judgment" against the property. *Id.* § 279.16.

The county auditor, on behalf of the State, then purchases each parcel associated with an unsatisfied judgment for an amount equal to the delinquent taxes, penalties, costs, and interest owed on each parcel. *Id.* § 280.01. This transaction occurs at a judgment sale; the title vests in the State "subject only to the rights of redemption" allowed by statute. *Id.* § 280.41.

During the statutory redemption period—which is three years for most properties—the former owner may redeem the property for the amount of delinquent taxes, penalties, costs, and interest. *Id.* §§ 281.01, 281.02, and 281.17. The county must notify the delinquent taxpayer of her right to redeem through multiple channels, including personal service. *Id.* § 281.23. A former property owner who wants to redeem but cannot afford to do so may make a "confession of judgment." *Id.* § 279.37. A former owner who makes a confession of judgment agrees to entry of judgment for all delinquent taxes, and the State consolidates her tax delinquency into a single obligation to be paid in installments over five to ten years. *Id.*

If the former owner does not redeem her property or make a confession of judgment, then final forfeiture occurs. Final forfeiture vests "absolute title" in the State and cancels all taxes, penalties, costs, interest, and special assessments against the property. *Id.* §§ 281.18, 282.07. For six months following final forfeiture, a former owner may apply to repurchase the forfeited property. *Id.* § 282.241, subdiv. 1. After the State takes absolute title to the forfeited property, the county decides whether to retain it for public use or sell it to a private buyer for not less than its appraised value. *Id.* § 282.01. If the county sells the property, the proceeds of the sale do not satisfy any of the former owner's tax debt because the tax deficiency was cancelled at final forfeiture. Instead, the county auditor distributes any net proceeds in accordance with Minn. Stat. § 282.08 for various purposes. Minnesota's tax-

forfeiture plan does not allow the former owner to recover any proceeds of the sale that exceed her tax debt.

When Tyler stopped paying her property taxes in 2010, Hennepin County followed Minnesota's tax-forfeiture scheme to collect her delinquent tax debt of $15,000. Tyler received notice of the foreclosure action and failed to respond. In April 2012, the county obtained a judgment against Tyler's condominium. Tyler then received notice of her right to redeem, but she did not exercise her right to redeem or confess judgment during the three-year redemption period. The State took absolute title to Tyler's condominium in July 2015, and thereby cancelled Tyler's $15,000 tax debt. Tyler did not apply to repurchase the condominium. The county then sold the property to a private party in November 2016 for $40,000. The county distributed the net proceeds pursuant to Minn. Stat. § 282.08.

After the sale of the condominium, Tyler sued Hennepin County. Tyler's principal argument was that the county violated the Takings Clause by allegedly taking her $40,000 condominium to satisfy her $15,000 tax debt and failing to pay her the $25,000 surplus. She also argued that the county's actions constitute an unconstitutional excessive fine, a violation of substantive due process, and unjust enrichment under state law. The district court granted the county's motion to dismiss for failure to state a claim on each count. We review the district court's decision *de novo*. *L.L. Nelson Enters. v. Cnty. of St. Louis*, 673 F.3d 799, 804 (8th Cir. 2012).

II.

Tyler argues that Hennepin County committed an unconstitutional taking, in violation of both the Constitution of the United States and the Minnesota Constitution. As relevant here, the inquiry is the same under both provisions: each constitution prohibits the government from taking "private property" for "public use" without paying the owner "just compensation." U.S. Const. amend. V, XIV; Minn.

-4-

Const. art. I, § 13; *see Hall v. State*, 908 N.W.2d 345, 352 n.5 (Minn. 2018). The Minnesota takings clause also encompasses takings in which the government "destroyed or damaged" property, but Tyler makes no such allegation in this case. Accordingly, we analyze her federal and state takings claims together.

The first step in evaluating a takings claim is to identify the interest in private property that allegedly has been taken. Tyler does not argue that the county lacked lawful authority to foreclose on her condominium to satisfy her delinquent tax debt: "People must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property." *Jones v. Flowers*, 547 U.S. 220, 234 (2006). Rather, Tyler argues that the county's retention of the surplus equity—the amount that exceeded her $15,000 tax debt—is an unconstitutional taking. Thus, for Tyler to state a plausible claim for relief, she must show that she had a property interest in the surplus equity after the county acquired the condominium.

Whether a property interest exists "is determined by reference to existing rules or understandings that stem from an independent source such as state law." *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (internal quotation omitted). We therefore look to Minnesota law to determine whether Tyler has a property interest in surplus equity.

Tyler argues that Minnesota recognizes a common-law property interest in surplus equity in the tax-forfeiture context. She relies on an 1884 decision of the Minnesota Supreme Court, *Farnham v. Jones*, 19 N.W. 83 (Minn. 1884), which addressed an 1881 Minnesota tax-collection statute. *See* 1881 Minn. Laws, ch. 135. The statute required landowners who owed delinquent property taxes as of 1879 to forfeit their land. *Farnham*, 19 N.W. at 84. The county auditor then sold the forfeited land at a public sale to satisfy the debt with the proceeds. The statute contained "no provisions in respect to the disposition of the surplus proceeds of the sale," but the court viewed this silence as "immaterial," because "the right to the

-5-

surplus exists independently of such statutory provision." *Id.* at 84-85. The parties here debate whether *Farnham* recognized a common-law property interest in surplus equity after a tax-foreclosure sale or whether the decision merely interpreted the 1881 statute.

We conclude that any common-law right to surplus equity recognized in *Farnham* has been abrogated by statute. In 1935, the Minnesota legislature augmented its tax-forfeiture plan with detailed instructions regarding the distribution of all "net proceeds from the sale and/or rental of any parcel of forfeited land." 1935 Minn. Laws, ch. 386, § 8. The statute allocated the entire surplus to various entities but allowed for no distribution of net proceeds to the former landowner. The necessary implication is that the 1935 statute abrogated any common-law rule that gave a former landowner a right to surplus equity.

Minnesota's current surplus distribution provision is codified at Minn. Stat. § 282.08. Like the 1935 statute, current law governs how every dollar of surplus is to be distributed. First, the net proceeds must cover various expenses related to improving and maintaining the forfeited property. Minn. Stat. § 282.08(1)-(2). Second, remaining net proceeds must be used to discharge any special assessments charged against the parcel for drainage. *Id.* § 282.08(3). The county board may then allocate remaining funds for forest development and county parks and recreation areas. *Id.* § 282.08(4)(i)-(ii). Finally, any remaining balance is to be paid in specified percentages to the county, the school district, and the city. *Id.* § 282.08(4)(iii). Minnesota's current distribution plan provides how the county must spend the entire surplus, and it does not give the former owner a right to the surplus. Thus, even assuming Tyler had a property interest in surplus equity under Minnesota common law as of 1884, she has no such property interest under Minnesota law today.

Where state law recognizes no property interest in surplus proceeds from a tax-foreclosure sale conducted after adequate notice to the owner, there is no

-6-

unconstitutional taking. In *Nelson v. City of New York*, 352 U.S. 103 (1956), the Supreme Court addressed the constitutionality of a tax-forfeiture scheme under which the City of New York foreclosed real property for delinquent taxes, and retained the entire proceeds of the sale. In that case, state law gave the property owners a right to redeem the property or to recover the surplus, but they took no timely action to do so. The Court held that "nothing in the Federal Constitution prevents" the government from retaining the surplus "where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings." *Id.* at 110. Even though the plaintiffs previously owned the parcels at issue, the Court rejected their claim that the Takings Clause forbade the City to retain the entire proceeds of a sale made after proper notice to owners who failed to respond.

*Nelson*'s reasoning on the Takings Clause controls this case despite a modest factual difference. It is true that New York foreclosure law allowed the plaintiffs in *Nelson* to file an action to redeem the property *or* to recover the surplus, while Tyler had options only to redeem the property, confess judgment, or apply to repurchase the property. But that distinction is immaterial. Like the property owners in *Nelson*, Tyler received adequate notice of the impending forfeiture action and enjoyed multiple chances to avoid forfeiture of the surplus. She could have recovered the surplus by redeeming the property and selling the condominium, or by confessing judgment, arranging a payment plan for the taxes due, and then selling the property. Only after she declined to avail herself of these opportunities did "absolute title" pass to the State. Minn. Stat. § 281.18. Even then, Tyler had six more months to apply to repurchase the condominium. *Id.* § 282.241, subdiv. 1. *Nelson* provides that once title passes to the State under a process in which the owner first receives adequate notice and opportunity to take action to recover the surplus, the governmental unit does not offend the Takings Clause by retaining surplus equity from a sale. That Minnesota law required Tyler to do the work of arranging a sale in order to retain the surplus is not constitutionally significant.

In addition to her takings claim, Tyler argues that the county's retention of her surplus equity is an unconstitutional excessive fine and a violation of substantive due process. She also contends that the county's actions constitute unjust enrichment under Minnesota law. The district court carefully analyzed Tyler's arguments and dismissed each count for failure to state a claim. We agree with the district court's well-reasoned order and affirm the dismissal of these counts on the basis of that opinion. *See Tyler v. Hennepin Cnty.*, 505 F. Supp. 3d 879, 895-99 (D. Minn. 2020).

The judgment of the district court is affirmed. Tyler's unopposed motion to file a supplemental letter brief is granted.

_____